IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| BRIAN FARABEE, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:18cv00425 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DR. JAMES A. LEE, et al., | ) | By: Michael F. Urbanski |
|     Defendants. | ) | Chief United States District Judge |

Brian Farabee, a Virginia inmate proceeding pro se, commenced this action pursuant to 42 U.S.C. § 1983, against defendants associated with the Virginia Department of Corrections ("VDOC") and the Marion Correctional Treatment Center ("Marion").[1] This matter is before the court on Farabee's motions seeking preliminary injunctions (ECF Nos. 14, 24, and 27), which were referred to a United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). See ECF No. 29. The Magistrate Judge filed a report and recommendation on August 30, 2018, recommending that Farabee's motions be denied. See ECF No. 75. Farabee filed objections to the report and recommendation. See ECF No. 76. After reviewing the record, the court overrules the objections, adopts the report and recommendation, and denies Farabee's motions for preliminary injunctions.[2]

A district court must review de novo any part of a report and recommendation to which a party objects properly. 28 U.S.C. § 636(b)(1)(C); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). The district court's reasoning need not be elaborate or lengthy, but it must provide a specific rationale that permits meaningful appellate review. See, e.g., United States v. Carter,

---

[1] Marion is the VDOC's psychiatric facility for treating adult male inmates who experience symptoms of a mental disorder.

[2] Farabee also filed a motion asking the court to rule on his motions seeking preliminary injunctive relief, see ECF No. 67; because the court is now ruling on the motions, Farabee's motion for a ruling is moot and, thus, will be dismissed.

564 F.3d 325, 330 (4th Cir. 2009).  A party must object "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007).  The Fourth Circuit explained that:

> To conclude otherwise would defeat the purpose of requiring objections.  We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report.  Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered.  In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

De novo review is not required "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Orpiano, 687 F.2d at 47.  An objection that repeats arguments raised before a magistrate judge is deemed a general objection to the entire the report and recommendation, which is the same as a failure to object.  Veney v. Astrue, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008).  A district court is also not required to review any issue de novo when no party objects. See, e.g., Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

A district court reviews for clear error any part of a report and recommendation not properly objected to. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).  Clear error means that a court, after "reviewing . . . the entire evidence[,] is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); see FTC v. Ross, 743 F.3d 886, 894 (4th Cir. 2014)

2

(noting a factual finding based on the resolution of conflicting evidence is entitled to deference under the clear error standard).

Farabee's motions seeking preliminary injunctive relief ask the court to: 1) prevent the defendants from treating him with Haldol and Thorazine (two antipsychotic medications); 2) prevent the defendants from forcing him to participate in the Intensive Diversionary Treatment Program ("IDTP")[3] at Marion; and 3) order the defendants to provide him with a Common Fare ("CF") diet or transfer him to a VDOC facility where he can receive a CF diet. The Magistrate Judge's report determined: that Farabee had not persuaded the court that he has a likelihood of succeeding on the merits of his claims or that he faces a likelihood of irreparable harm if injunctive relief is not granted; that the balance of equities do not tip in Farabee's favor; and that an injunction would not be in the public's interest. Accordingly, the Magistrate Judge recommends that the court deny Farabee's motions for preliminary injunctive relief. Farabee's objections state that the court "should reject and overrule [the report] because it rel[ies] on patently incorrect factual findings and ignores the facts and a plethora of material evidence produced by plaintiff in this case."

With regard to the antipsychotic medications, Farabee argues in his objections, as he did in his motions and supporting documentation, that he has a "well-documented history" of allergies to the medications and of sexual abuse, which make the "forced drugging" of him a "substantial risk" of serious harm to him. He also points again to his advanced medical directive which indicates his lack of consent to the use of antipsychotic medications. Finally, he reargues

---

[3] In some instances throughout the record, this program is referred to as Secure Diversionary Treatment Program ("SDTP"). It appears that these references relate to the same program. The court will use IDTP to refer to the program, to be consistent with the Magistrate Judge's report.

3

that the medications were not used to treat his mental illness, but rather to prevent him from self-harming.

With regard to his participation in the IDTP, Farabee argues in his objections, as he did in his amended complaint, that he was placed in the program in violation of his due process rights. Farabee claims that the Magistrate Judge erred in considering his claim as a living conditions claim, rather than a due process claim.

With regard to receiving the CF diet, Farabee argues in his objections that the Magistrate Judge's determination that Farabee had not alleged a substantial burden on his religious beliefs is "blatantly contradicted" by the record. He states that he is a "practicing Jewish individual, . . . he is eligible to receive a diet consistent with [his] faith, and [Marion] has not and does not provide such diet."

Having reviewed the report and recommendation, Farabee's objections, and pertinent portions of the record de novo, the court will adopt the report and recommendation. Foremost, Farabee's objections mostly consist of legal assertions and general objections which do not specifically identify an error in the report and recommendation. See, e.g., Orpiano, 687 F.2d at 47; Farmer v. McBride, 177 F. App'x 327, 331 (4th Cir. 2006) (noting a district court does not need to review general and conclusory objections that do not direct the court to a specific error). The court is satisfied that there is no "clear error" in the report and recommendation.

Preliminary injunctive relief is an extraordinary remedy that courts should apply sparingly. See Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 811 (4th Cir. 1991). As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by

a "clear showing" that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20, 22 (2008). A failure to establish any element is fatal to a request for such relief. Id. The party seeking relief must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." Direx Israel, Ltd., 952 F.2d at 812. Without a showing that the plaintiff will suffer imminent, irreparable harm, the court cannot grant preliminary injunctive relief. Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 360 (4th Cir. 1991). "The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." Va. Chapter, Associated Gen. Contractors, Inc. v. Kreps, 444 F. Supp. 1167, 1182 (W.D. Va. 1978) (quoting Va. Petroleum Jobbers Ass'n. v. Fed. Power Comm'n, 259 F.2d 921 (D.C. Cir. 1958)).

Because Farabee wants to change the status quo, he seeks a mandatory injunction that is "disfavored[] and warranted only in the most extraordinary circumstances." In re Microsoft Antitrust Litig., 333 F.3d at 525. Consequently, the court must give an "even more searching" review under Winter than if Farabee was seeking to enforce the status quo. Id. Also, the court must be mindful that "in the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." Barnett v. Young, No. 5:18cv279, 2018 U.S. Dist. LEXIS 117088, at *6, 2018 WL 3405415, at *2 (S.D. W. Va. June 21, 2018). "It is well settled that the decision where to house inmates is at the core of prison administrators'

5

expertise." McKune v. Lile, 536 U.S. 24, 38 (2002). In this case, Farabee has failed to clearly show all of the Winter elements as to each of his requests.

Farabee asks the court to prevent the defendants from treating him with Haldol and Thorazine. In response to Farabee's motions, defendant Nurse Practitioner Olinger submitted a declaration (ECF No. 28-1) that states that Farabee is not currently subject to an involuntary treatment order, is not currently prescribed any antipsychotic medication, and is not subject to a standing order (or "PRN" order)[4] to receive any antipsychotic medication. Indeed, all of the instances in which Farabee complains of being "forcibly medicated" with the antipsychotic medications are in the past, with no alleged incidents this year. Based on these facts, the court cannot find that Farabee has demonstrated a likelihood of suffering imminent, irreparable harm if no preliminary injunctive relief is granted.

Farabee asks the court to prevent the defendants from "forcing" him to participate in the IDTP. In response to Farabee's motions, Dr. Haynes submits a declaration (ECF No. 49-1) explaining IDTP. IDTP offers treatment in a secure setting to inmates with a severe mental illness who frequently engage in assaultive, disruptive, and/or unmanageable behaviors. IDTP can be particularly appropriate for offenders with borderline personality traits, such as repeated instances of self-harm. In IDPT, inmates are offered at least ten hours per week of structured therapeutic interventions and at least ten hours per week of non-structured recreational opportunities. Treatment and therapy in the IDTP unit is voluntary. There is no punitive action or discipline for failing to participate in therapy; rather, the inmate simply will not progress through the program. The IDTP is considered general population housing and inmates are housed in single cells. Depending on the inmate's behavior and progress in the program, an

---

[4] This type of order is also known as an "as needed" order.

inmate can also have personal property in their cells. Farabee was assigned to IDTP's general population unit on September 27, 2018; however, when he discovered that he was being transferred to IDTP, he threatened self-harm. As a result, he was sent to restrictive housing. Farabee has remained in restrictive housing due to his refusal to participate in risk assessments, threatening of staff, threatening self-injurious behavior, actually carrying out such self-injurious behavior, and hunger strikes.

Restrictive housing is a special purposed bed assignment operated under maximum security regulations for the personal protection and welfare of custodial management of inmates; it is not a disciplinary measure. For self-injurious inmates such as Farabee, safety precautions are taken, including the issuance of safety blankets and smocks and the withholding of property items which an inmate could destroy, use as a weapon, or otherwise use to induce self-injury. In addition, Farabee is monitored through a camera in his cell and receives fifteen-minute checks by staff. Assignment to restrictive housing is not permanent. Mental health providers develop plans specifically designed to meet an inmate's needs, with the goal being the inmate's reentry to general population. Farabee is offered individual therapy while in restrictive housing, but refuses to participate. He is not forced to participate in therapy or treatment. Farabee can be released from restrictive housing and housed in the IDTP's general population unit when he demonstrates that he can safely be housed in general population without disruptive behavior. He must stop hurting himself, stop threatening others and himself, stop hunger strikes, demonstrate appropriate grooming and hygiene (for example, stop urinating and defecating in inappropriate places and/or smearing and throwing these substances on surfaces, himself, and others), and participate in risk assessments. Based on this evidence, the court cannot find that Farabee is

likely to suffer imminent, irreparable harm in the absence of preliminary injunctive relief. Rather, the record evinces that Farabee is a consistent and <u>severe</u> risk to himself while in the state's care. Farabee's history of violence warrants mitigating that risk of self-harm, not amplifying it by being in less restrictive conditions during this lawsuit. Keeping the status quo – staying in more restrictive housing without ready access to makeshift tools of violence – is more likely to physically prevent Farabee from irreparably harming himself than freeing him without regard to the treatment programs developed and implemented for him.

Farabee asks the court to order the defendants to provide him with a CF diet or transfer him to a VDOC facility where he can receive a CF diet. Farabee argues that he demonstrated a substantial burden despite the Magistrate Judge's finding to the contrary. A substantial burden on religious exercise occurs when a government, through act or omission, "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." <u>Lovelace v. Lee</u>, 472 F.3d 174, 187 (4th Cir. 2006) (quoting <u>Thomas v. Review Bd. of Ind. Employment Sec. Div.</u>, 450 U.S. 707, 718 (1981)). Under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the plaintiff bears the initial burden of establishing that the government's actions substantially burdened his exercise of religion. <u>See, e.g.</u>, <u>Krieger v. Brown</u>, 496 F. App'x. 322, 324 (4th Cir. 2012). In conducting the substantial burden inquiry, the plaintiff "is not required . . . to prove that the exercise at issue is required by or essential to his religion." <u>Id.</u> at 325 (citing <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 725 n.13 (2005)). Nevertheless, "at a minimum the substantial burden test requires that a . . . plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." <u>Smith v. Allen</u>, 502 F.3d 1255, 1278 (11th Cir.

8

2007). No substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion. Living Water Church of God v. Charter Twp. of Meridian, 258 F. App'x 729, 739 (6th Cir. 2007). Farabee alleges that he is Jewish and that he has been approved for the CF diet, but that he is not receiving the CF diet. Farabee fails to establish, however, that not receiving a CF diet has substantially burdened his religious exercise. Farabee does not explain how self-selecting from the meals that he does receive or buying food from the commissary would not meet his religious dietary needs. Shabazz v. Johnson, No. 3:12cv282, 2015 U.S. Dist. LEXIS 86787, at *17-18, 2015 WL 4068590, at *8 (E.D. Va. July 2, 2015) (finding no substantial burden where Nation of Islam inmate could self-select from Common Fare diet items to eat only once per day and consume only acceptable vegetarian foods). Farabee has not sufficiently alleged any substantial pressure which causes him to violate his beliefs or forces him to abandon one of the precepts of his religion. Accordingly, the court concludes that Farabee has not demonstrated a likelihood of success on the merits of his claim or that he is likely to suffer imminent, irreparable harm if preliminary injunctive relief is not granted.[5]

As previously noted, "preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." MicroStrategy Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001). Even after de novo review, the court is not persuaded that it should intervene and compromise the status quo (and the security and order) during this lawsuit. Accordingly, the court overrules Farabee's

---

[5] Moreover, he has not shown that any of the named defendants in this claim are able to provide him with a CF diet.

objections, adopts the report and recommendation, and denies Farabee's motions for preliminary injunctions.

**ENTER**: This 30th day of September, 2019.

/s/ Michael F. Urbanski
Chief United States District Judge